1
2
3
4
5
6
7
8
9           **IN THE UNITED STATES DISTRICT COURT**

10                **FOR THE DISTRICT OF ARIZONA**

11
United States of America,                    )
12                                            )           CR 05-01702-FRZ (JCG)
            Plaintiff,                        )
13                                            )      REPORT AND RECOMMENDATION
     vs.                                      )
14                                            )
     Ricardo Ariel Millan-Zavala,             )
15                                            )
            Defendant.                        )
16 _____ )

17          On April 20, 2006, Defendant Millan-Zavala filed a Motion to Suppress (Doc. No.

18   31).  On May 5, 2006, Defendant Salvador Estrada filed a Notice of Joinder in the Motion

19   (Doc. No. 34). On May 22, 2006, the government filed a Response (Doc. No. 36).  This

20   matter came before the Court for a hearing and a report and recommendation as a result of

21   a referral on August 5, 2005, pursuant to LRCrim 5.1.

22          This matter was set for evidentiary hearing and evidence was heard on June 19, 2005.

23   Defendant Millan-Zavala, who remains in custody at this time, was present and represented

24   by counsel. Neither Defendant Salvador Estrada, nor his counsel, were present.   The

25   Assistant United States Attorney indicated that counsel had contacted him and stated he

26   would not be present for the hearing.  Defendant Estrada did not file or indicate in any

27   manner that he waived his appearance at this hearing.  This matter was submitted following

28   oral argument at the conclusion of the hearing and taken under advisement.

1   Having now considered the matter, the Magistrate Judge recommends that the District

2   Court, after its independent review: (1) deny Defendant Millan-Zavala's Motion to Suppress,

3   and (2) deny Defendant Estrada's request for Joinder in the Motion to Suppress.

4   FACTUAL FINDINGS

5   The facts in this case are straightforward and relatively undisputed.

6   On August 2, 2005, Defendant Salvador Estrada was driving a red Ford pick-up truck

7   westbound on Interstate 10 near milepost 304. Defendant Ricardo Ariel Millan-Zavala was

8   a passenger in the front seat of the truck.

9   Officer Miller, an Arizona Department of Public Safety officer with approximately

10  seven years of experience, received information from his dispatcher that a red Ford pick-up

11  truck with a particular license plate was transporting drugs. Officer Miller parked in the

12  median at milepost 304. When the red pick-up truck with the license plate provided by the

13  dispatcher (the Defendants' truck) passed, Officer Miller clocked it traveling at 65 mph in a

14  75 mph zone. He pulled out, caught up with the truck and followed it, traveling westbound

15  in the slow lane.

16  After a short distance, the red pick-up truck pulled into the fast lane, behind a tractor

17  trailer which was passing a second tractor trailer driving in the slow lane. Officer Miller,

18  who stayed in the slow lane, observed that the Defendants' vehicle was following the tractor

19  trailer at a distance of approximately twenty feet while driving at a rate of 65 mph.

20  According to Officer Miller, measuring from a fixed point, that meant that the Defendants'

21  vehicle would pass that fixed point one second after the semi-truck passed the same point.

22  Officer Miller testified that driving at that distance is a violation of A.R.S. § 28-730(A),

23  which prohibits a vehicle from following more closely than is reasonably prudent considering

24  the speed of the vehicles on the road and the condition of the highway. Officer Miller

25  indicated that, based on his training and experience, it is unsafe for a driver traveling at the

26  lesser rate of 55 mph to follow with less than a two second interval difference. As the rate

27  of speed increases, such as where the driver is traveling at 65 mph, a driver should allow

28  additional distance between the vehicles. Officer Miller stated that if the semi-truck stopped,

1   it would have been impossible for the red pickup truck to stop in time to avoid a collision.

2   Officer Miller testified that the Defendants' truck followed too closely during the entire time

3   that it took for the truck and the tractor trailer to pass the tractor trailer on the right -

4   approximately fifteen to thirty seconds.

5          After observing the red pickup truck pass the tractor trailer, Officer Miller moved into

6   the fast lane, passed the tractor trailer, pulled in behind the Defendants, and activated his

7   emergency lights.  Officer Miller's patrol vehicle is equipped with a mounted video recorder

8   that automatically turns on when the front emergency lights are activated.  The camera is

9   focused to record events occurring in front of the patrol car.  The video recorder was

10  activated when Officer Miller turned on his emergency lights.  In the recording, Officer

11  Miller can be heard telling the radio dispatch operator that he is initiating a traffic stop

12  because the red truck is following too closely.

13         Although the patrol car lights were activated, initially the red truck did not yield.

14  After a short time, Defendant Estrada, the driver, turned on the right turn signal, but

15  continued to drive in the slow lane.  Estrada then pulled the truck into the emergency lane,

16  but did not immediately stop.  Shortly thereafter, the truck came to a stop in the emergency

17  lane.

18         Officer Miller parked behind the truck and got out of his car.  As he walked towards

19  the truck, he saw something thrown from the window on the passenger side.  Officer Miller,

20  who was the only officer at the scene, then drew his weapon and ordered the persons in the

21  truck to stick their hands out of the truck so that he could see them.  He ordered the driver

22  to step out of the vehicle and to walk backwards toward the patrol car.  A short time later,

23  after the driver had been frisked and handcuffed, he ordered the passenger to step out of the

24  truck, and walk backwards toward the patrol car.

25         Officer Miller testified that he drew his weapon because: he had information that the

26  truck was a suspected load vehicle; the vehicle had failed to yield and he was close to having

27  to call for a pursuit; he was concerned that the driver, by indicating he would yield, but not

28  doing so, may have been planning an ambush; he observed the passenger moving around; he

1   saw the passenger throwing something black out of the window which he suspected was a

2   gun; and where there is one weapon there is likely to be another.

3       Officer Miller asked both Defendants whether there was anyone else in the truck.

4   After receiving a negative answer, Officer Miller slowly approached the truck to see if there

5   was any one else inside.  He looked into the truck first from the passenger side, where

6   Millan-Zavala had left the door open, then from the driver side door, which he opened.

7   Officer Miller then moved away from the truck.

8       Officer Miller testified that he first smelled marijuana when he approached the

9   passenger door to check if there was anyone else in the truck and that he first saw the

10  marijuana when he looked in the driver's door.  The marijuana bundles were in plain view

11  on the seat and floor of the truck partially covered by a blanket.  Pictures showing the

12  marijuana in the truck were admitted into evidence.

13                              ANALYSIS

14                          *Motion to Suppress*

15      Defendant Millan-Zavala argues that Officer Miller unlawfully stopped the truck in

16  which Defendant was traveling, and therefore all evidence resulting from the stop - the

17  marijuana and the Defendant's statements - must be suppressed.  Millan-Zavala suggests that

18  Officer Miller's explanation for the traffic stop - that the truck was following too closely -

19  is a pretext and that Officer Miller had no legitimate basis for stopping the truck.

20      The Fourth Amendment's prohibition against unreasonable searches and seizures

21  applies to investigatory traffic stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To

22  justify an investigative stop, a police officer must have reasonable suspicion that a suspect

23  is involved in criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th

24  Cir.2000). Reasonable suspicion is formed by "specific articulable facts which, together with

25  objective and reasonable inferences, form the basis for suspecting that the particular person

26  detained is engaged in criminal activity." *Lopez-Soto*, 205 F.3d at 1105 (internal quotation

27  marks and citations omitted). An officer's inferences must "be grounded in objective facts

28  and be capable of rational explanation." *Id*. (internal quotation marks and citations omitted).

1   The Court must consider the "totality of the circumstances" to see whether the officer had a
2   "particularized and objective basis" for suspecting criminal activity. *Arvizu*, 534 U.S. at 273
3   (internal quotation marks and citations omitted); *see also United States v. Diaz-Juarez*, 299
4   F.3d 1138, 1141-42 (9th Cir. 2002). Officers are encouraged to draw upon their own
5   specialized training and experience in assessing the "totality of the circumstances." *Arvizu*,
6   534 U.S. at 273-74.

7       As a general matter, the decision to stop an automobile is reasonable where the police
8   have probable cause to believe that a traffic violation has occurred. *See Whren v. United*
9   *States*, 517 U.S. 806, 819 (1996). In the present case, Officer Miller credibly testified that
10  he stopped the Defendants' truck because he believed that a violation of A.R.S. § 28-730(A)
11  had occurred.  This statute provides that "the driver of a motor vehicle shall not follow
12  another vehicle more closely than is reasonable and prudent and shall have due regard for the
13  speed of the vehicles on, the traffic on and the condition of the highway." Officer Miller
14  testified as to specific facts which supported his belief that the truck was following too
15  closely, including his observations about the distance between the Defendants' truck and the
16  tractor trailer, the rate of speed of the Defendants' vehicle, and his own training and
17  experience as to appropriately safe distances between vehicles and how to calculate safe
18  distances.  Officer Miller's testimony demonstrated that his decision to stop the Defendants'
19  vehicle was grounded in specific, objective observations which support a reasonable
20  inference that the truck was being driven in violation of Arizona traffic law. Based on the
21  totality of the circumstances, the Court concludes that Officer Miller had a particularized and
22  objective basis for the stop. *See United States v. Torres*, 119 Fed.Appx. 874, 876 (9th Cir.
23  2004) (holding that officer had reasonable suspicion to justify investigative stop where
24  officer testified that he observed the defendant's vehicle following behind another car at a
25  distance of five to fifteen feet, at the speed of fifty-five miles per hour, and that based on his
26  experience, this distance was too close for safety and was a violation of A.R.S. § 28-730(A)
27  because the defendant's vehicle would not have enough time to stop without hitting the other
28  vehicle or running off the roadway).

1    Defendant Millan-Zavala suggests that Defendant Estrada did not violate any traffic
2    laws and that Officer Miller instead fabricated a reason for the stop as a mere pretext for
3    pulling over a truck matching the description of an alleged drug-transport truck.  In support,
4    Defendant Millan-Zavala argues that Officer Miller could have manually turned on his patrol
5    car video camera to record the traffic violation, but that he did not do so.  The Defendant's
6    argument is not persuasive.  This Court found  Officer Miller's testimony to be specific, objective
7    and credible.  No evidence was presented to dispute Officer Miller's testimony.  In fact, the evidence
8    supports the finding that Officer Miller did in fact stop the Defendants' truck for following too
9    closely.  For example, Defendant Estrada, the driver, stated on the videotape that he was "sorry" for
10   following the tractor-trailer too closely.  Similarly, when the camera was automatically turned
11   on with the activation of the emergency lights, one of the first things that is heard on the tape
12   is Officer Miller telling his dispatch officer that he is pulling over the truck for following too
13   closely.  That Officer Miller did not turn on his camera in anticipation of a traffic violation that had
14   not yet occurred does not suggest that he was lying about the subsequent traffic violation.

15    Defendant Millan-Zavala also argues that he was arrested at the time he was
16   handcuffed by Officer Miller, that Officer Miller lacked probable cause at that time to arrest
17   him, and that therefore the discovery of the marijuana following his alleged arrest should be
18   suppressed. The Court disagrees with Defendant's characterization of the handcuffing as an
19   arrest. A defendant is not automatically under arrest when he is handcuffed. Police
20   conducting on-the-scene investigations involving potentially dangerous suspects may take
21   reasonably necessary precautionary measures without converting a detention into an arrest.
22   *See United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982) (holding that a brief but
23   complete restriction of liberty, if not excessive under the circumstances, is permissible during
24   a stop and does not necessarily convert the stop into an arrest). In this instance, Officer
25   Miller's decision to handcuff the Defendants was not an excessive restraint. When
26   Defendants were first handcuffed, it was prior to any search of the car. At that time, Officer
27   Miller was operating under a reasonable belief that one of the Defendants may have thrown
28   a gun out of the vehicle, that another person(s) might still be in the vehicle, and that any

1   person in the vehicle could be armed. It was reasonable for Officer Miller to take adequate

2   protective measures to secure the Defendants during his protective sweep of their vehicle.

3   The handcuffs eliminated the possibility of an assault or escape attempt during the protective

4   sweep, particularly if an arrest became imminent. *See id.* During his protective sweep,

5   Officer Miller both smelled and saw marijuana in the passenger compartment of the vehicle.

6   At that time, Officer Miller had probable cause to arrest the Defendants.

7       In the alternative, even if Officer Miller's decision to handcuff the Defendants did

8   amount to an arrest, it would nevertheless be lawful. An officer may arrest for a fine-only

9   traffic violation, even if the arrest is a mere pretext to conduct a search. *See Arkansas v.*

10  *Sullivan*, 532 U.S. 769, 771-72 (2001).

11                                *Request for Joinder*

12      Defendant Estrada filed a Notice of Joinder, requesting joinder in Defendant

13  Millan-Zavala's Motion to Suppress (Doc. No. 34). Criminal defendants have a right to

14  counsel at all critical stages of criminal proceedings. *See United States v. Wade*, 388 U.S.

15  218, 224 (1967). A pretrial motion to suppress evidence is a critical stage of the prosecution

16  requiring the presence of counsel for the accused, because in many cases the crucial issue is

17  the admissibility of evidence found in the defendant's possession. *See United States v.*

18  *Hamilton*, 391 F.3d 1066, 1070 (9th Cir. 2004)(citing *Olney v. United States*, 433 F.2d 161,

19  163 (9th Cir.1970)). Because neither Estrada nor his counsel appeared at the hearing on the

20  Motion to Suppress, and because Estrada did not file a notice of waiver of his appearance at

21  the hearing, the Magistrate Judge recommends that his request for Joinder be denied without

22  prejudice.

23                                RECOMMENDATION

24      In view of the foregoing, it is recommended that, after its independent review of the

25  record, the District Court: (1) DENY without prejudice Defendant Estrada's request for

26  joinder in the Motion to Suppress (Doc. No. 34), and (2) DENY Defendant Millan-Zavala's

27  Motion to Suppress evidence (Doc. No. 31). The parties have ten (10) days to serve and file

28

1  written objections to the Report and Recommendation.  The parties are advised that any

2  objections should be filed with the following caption: **CR-05-1702-FRZ.**

3  DATED this 21st day of June, 2006.

4

5

6

7

8  _____
Jennifer C. Guerin
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28